## A95A0170. BANK SOUTH, N.A. v. ZWEIG et al.
### (456 SE2d 257)

BLACKBURN, Judge.

This is an appeal from the trial court's dismissal of Bank South's petition to foreclose upon a certain 1988 Porsche 911 automobile.

The facts found by the trial court following a bench trial are as follows: On May 17, 1993, Claude DeFontaine, through Ace Automotive, purchased the 1988 Porsche automobile, which is the subject of this foreclosure action, and gave John Nelson permission to sell the automobile as an agent of Ace Automotive. Nelson was an automobile dealer in the business of buying and selling automobiles for profit, and previously sold vehicles owned by Ace Automotive.

Acting as Ace Automotive's agent, on May 26, 1993, Nelson sold the Porsche to Dennis Zweig through March Enterprises, Inc., Zweig's closely held corporation. Zweig financed the purchase of the vehicle in part through a loan from Trust Company Bank, and in exchange for the loan, Zweig gave Trust Company Bank a security interest in the vehicle. Nelson had informed a representative of Trust Company Bank that the title to the vehicle would be delivered to the bank and that the bank would be listed on the title as a lienholder. However, a certificate of title was not transferred to Zweig through March Enterprises.

Zweig has been in continuous possession of the vehicle since the date of the sale with the exception of a one or two-day period when Nelson obtained possession of the vehicle in order to have some promised repairs made on the vehicle. During that time period, Nelson gave DeFontaine possession of the vehicle and DeFontaine took the vehicle to Chattahoochee Bank, Bank South's predecessor in interest, for the purpose of substituting the Porsche as collateral on a prior $40,000 note issued to DeFontaine but guaranteed by Ace Automotive. On or about July 22, 1993, the Porsche was substituted as collateral on the prior note and the security interest on one of the two Mercedes Benz automobiles previously securing the note was released. When payments were not made pursuant to the terms of the note, Chattahoochee Bank instituted the instant foreclosure proceeding against Zweig and Ace Automotive. Trust Company Bank subsequently intervened in the action.

1. In its first three enumerations of error, Bank South asserts that the trial court erred in dismissing its foreclosure petition because its security interest in the vehicle was superior to Zweig's security interest inasmuch as the transfer to Zweig was not effected on the certificate of title on the vehicle. However, Zweig's "failure to obtain the certificate of title does not deprive him of any right, title, or interest in the [Porsche] under OCGA § 40-3-3[2] (d) since this section recognizes that as between the parties an ownership may change hands

without the necessity of transferring a title certificate by the seller and obtaining a new one in the name of the purchaser." (Citation and punctuation omitted.) *McDowell v. Owens*, 170 Ga. App. 421, 422 (317 SE2d 275) (1984).

"The Georgia Title Certificate Law does indeed provide a simple statutory method of proving ownership to motor vehicles but it is not exclusive. . . . The statute did not change the existing case law as to the manner in which ownership of chattels including automobiles could be proven. The certificate is not the title or ownership itself but only evidence of it." (Citations and punctuation omitted.) *Owensboro Nat. Bank v. Jenkins*, 173 Ga. App. 775, 778 (328 SE2d 399) (1985). It is the substantive law of contract and not the Motor Vehicle Certificate of Title Act which creates and defines property interests in motor vehicles. *State of Ga. v. Banks*, 215 Ga. App. 828 (452 SE2d 533) (1994).

Since the trial court found as fact that Ace Automotive authorized Nelson as its agent to sell the vehicle to Zweig, Zweig through March Enterprises, became the owner of the vehicle at the time that the sale was made on May 26, 1993, for valuable consideration. Id. Consequently, the trial court correctly concluded that title to the vehicle passed to March Enterprises at that point and Ace Automotive retained no interest in the vehicle.

Security interest in chattel attaches only to the extent of the debtor's interest in the chattel. Inasmuch as Ace Automotive did not have any interest in the subject vehicle at the time that the purported substitution agreement was executed, and hence no property to encumber, Chattahoochee Bank did not have a valid security interest. Id.

Under the rationale of the special concurrence, Bank South should prevail as an innocent third party because the bank took every possible action to protect itself. In reaching its conclusion, the special concurrence relies on facts contained in Bank South's brief that the bank obtained the original title and the MV-1 application prior to its substitution of the collateral. However, such factual assertions are not supported by the record before us. It is well-settled that facts asserted in appellate briefs which are unsupported by the appellate record should not be considered on appeal. *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 51 (443 SE2d 871) (1994). Ace Automotive, as the seller of the vehicle, and DeFontaine, as an officer with Ace Automotive, should not be allowed to benefit by the purported substitution of the collateral based upon their failure to comply with OCGA § 40-3-32 (d) after their agent has received valuable consideration for the purchase of the vehicle. See *Jenkins*, supra.

2. Bank South's remaining enumerations of error involve issues which require consideration of the transcript of the bench trial and all

of the evidence submitted in the trial court in connection with this petition. Although Bank South indicated in its notice of appeal that a transcript of the evidence and proceedings in its entirety would be filed for inclusion in the appellate record, the record before us does not contain the trial transcript or any of the exhibits tendered at trial which are referred to in the parties' briefs. The certificate of the deputy clerk of the trial court shows that no transcript of evidence and the proceedings was filed in this case.

"The burden is on the party alleging error to show it affirmatively by the record and when the burden is not met, the judgment complained of is assumed to be correct and must be affirmed. Where the transcript is necessary for review and appellant omits it from the record on appeal, the appellate court must assume the judgment below was correct and affirm." (Citations and punctuation omitted.) *Mullins v. Columbia County*, 202 Ga. App. 148, 150 (413 SE2d 489) (1991). Consequently, we must affirm the trial court's dismissal of Bank South's foreclosure petition.

*Judgment affirmed. McMurray, P. J., concurs. Andrews, J., concurs specially.*

ANDREWS, Judge, concurring specially.

Because the record is incomplete, there is no evidence before us regarding the precise status of the certificate of title on July 22, 1993 when DeFontaine took the Porsche to Chattahoochee Bank and substituted it as collateral on the prior $40,000 note. Accordingly, affirmance of the trial court appears correct and I concur therein.

Nonetheless, I differ with the majority's analysis in Division 1 regarding the effect of title certificates on third parties. " '[A]s *between the parties*[,] an ownership may change hands without the necessity of transferring a title certificate by the seller and obtaining a new one in the name of the purchaser.' *Canal Ins. Co. v. Woodard*, 121 Ga. App. 356, 358 (173 SE2d 727) (1970)." (Emphasis supplied.) *McDowell v. Owens*, 170 Ga. App. 421, 422 (317 SE2d 275) (1984).

In the context of third parties, here Bank South, this rule is different. OCGA § 40-3-32 (d) provides that "[e]xcept as provided in Code Section 40-3-33 and as between the parties, a transfer by an owner is not effective until this Code section and Code Section 40-3-33 have been complied with; and no purchaser or transferee shall acquire any right, title, or interest in and to a vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly transferred in accordance with this Code section." In *Canal*, supra, the court stated: "as between the parties an ownership may change hands without the necessity of transferring a title certificate by the seller and obtaining a new one in the name of the purchaser. [Cit.] However, as to third parties who may acquire an in-

terest, it is essential that the title transfer be completed." Id. at 358-359.

The requirement that a title transfer be completed as to third parties who acquire an interest in the vehicle ensures that the interests of a third party acting in good faith will be protected. Here, Bank South claims that it inspected the Porsche as collateral and obtained the original title and MV-1 title application prior to allowing the substitution of collateral. In so doing, Bank South took every possible action to protect itself.

On the other hand, Zweig did not take all reasonable actions to protect his interest in the vehicle. He could have demanded the certificate of title before he paid for the vehicle, and thereby protected his interest in the vehicle. He did not do so, and left open the possibility that his interest would be unprotected as to a third party.

DECIDED MARCH 10, 1995 —
RECONSIDERATION DENIED MARCH 29, 1995.

*Leon S. Jones*, for appellant.
*Barry Staples, Goldner, Summers, Scrudder & Bass, William W. Horlock, Jr., Quirk & Quirk, Neal J. Quirk*, for appellees.