A01A0708. MITCHELL MOTORS, INC. v. BARNETT.
(549 SE2d 445)

RUFFIN, Judge.

Mitchell Motors, Inc. appeals from the trial court's order denying it summary judgment and granting David Barnett's cross-motion for summary judgment in this declaratory judgment action. For reasons that follow, we affirm.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[1] In this case, the facts are undisputed. On February 20, 1998, Mitchell Motors, a car dealership, sold a used Jeep Cherokee to another car dealership, Chris Auto Sales, Inc., for $14,000. Chris Auto took possession of the Jeep after giving Mitchell Motors a bank draft for the full purchase price. Chris Auto's bank subsequently dishonored the draft for insufficient funds, and Mitchell Motors demanded that Chris Auto pay by other means or return the Jeep. It is unclear when Mitchell Motors learned about the dishonored draft or demanded relief from Chris Auto. The evidence shows, however, that Chris Auto neither submitted additional pay-

---

[1] OCGA § 9-11-56 (c).

ment nor returned the Jeep.

On March 20, 1998, Chris Auto sold the Jeep to one of its regular customers, Barnett, for $16,734.69. Barnett paid for the Jeep in full with a check, which Chris Auto negotiated. At the time of sale, Barnett received a sales contract, a vehicle buyer's order, and possibly an odometer statement. He did not receive the Jeep's certificate of title, but expected Chris Auto to process the paperwork and mail the certificate to him, "just like they always [did]." According to Barnett, "[t]hat's just the way it was always done: Pay the tax and tag and title fee, and I get it in the mail from the dealership."

When Barnett did not receive the Jeep's certificate of title within four to six weeks, he called Chris Auto, which promised to "check into" the situation. He heard nothing further and called the dealer back. At that point, Barnett learned that Chris Auto had purchased the Jeep from Mitchell Motors, which apparently still had the certificate of title, and "that there was a problem [Chris Auto] was trying to straighten out." Eventually, a representative from Mitchell Motors called Barnett and "advised that Chris Auto had not paid Mitchell Motors for the Jeep vehicle and the vehicle remained the property of Mitchell Motors." The Mitchell Motors representative demanded that Barnett pay Mitchell Motors $14,000 or return the Jeep. Barnett refused, arguing that he had already purchased the Jeep from Chris Auto. Mitchell Motors did not release the certificate of title to Barnett, who has been unable to obtain a license tag and was told by police not to drive the Jeep.

Barnett subsequently sued Mitchell Motors. Claiming to be a bona fide purchaser for value, Barnett requested declaratory relief and an order from the trial court directing Mitchell Motors to release the certificate of title to him. In the alternative, he sought damages for conversion and tortious interference with contract. Mitchell Motors counterclaimed for $14,000, and the parties filed cross-motions for summary judgment. Following a hearing, the trial court granted Barnett's motion for summary judgment, denied Mitchell Motors' motion, and ordered Mitchell Motors to deliver the Jeep's certificate of title to Barnett.

1. In its first enumeration of error, Mitchell Motors argues that the trial court erred in denying its motion for summary judgment and granting summary judgment to Barnett. We find no error.

Title to the Jeep passed to Chris Auto, despite the dishonored bank draft. Under OCGA § 11-2-401 (2), "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." Because the record reveals no explicit agreement to the

contrary, Chris Auto obtained title to the Jeep Cherokee when it took possession of the vehicle on or about February 20, 1998. Mitchell Motors' refusal to deliver the certificate of title to Chris Auto does not alter this result. As we have noted, "ownership may change hands without the necessity of transferring a title certificate by the seller and obtaining a new one in the name of the purchaser."[2]

Given the dishonored bank draft, Chris Auto's title was likely voidable.[3] A person with voidable title, however, can transfer good title to a good faith purchaser for value:

> A purchaser of goods acquires all title which his transferor had or had power to transfer. . . . A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though . . . [t]he delivery was in exchange for a check which is later dishonored.[4]

The record shows that Mitchell Motors delivered the Jeep to Chris Auto under a "transaction of purchase."[5] Chris Auto subsequently sold the vehicle for over $16,000 to Barnett, who was not aware of the dispute between Mitchell Motors and Chris Auto until well after the sale. Nothing in the record raises a question about — and Mitchell Motors apparently does not dispute — Barnett's good faith; he simply purchased a used car from a dealer that he trusted.[6] Furthermore, although it is unclear when Mitchell Motors learned that Chris Auto's bank draft had been dishonored, the record shows that Mitchell Motors did not void or rescind its purchase contract with Chris Auto before the sale to Barnett. At most, Mitchell Motors demanded that Chris Auto "immediately pay the amount of the dishonored draft or return the Jeep." Mitchell Motors thus gave Chris

---

[2] (Punctuation omitted.) *Right Touch of Class v. Superior Bank*, 244 Ga. App. 473, 474 (1) (536 SE2d 181) (2000); see also *Mimick Motor Co. v. Moore*, 248 Ga. App. 297, 298-299 (1) (a) (546 SE2d 533) (2001).

[3] See OCGA § 11-2-403 (1); *Charles Evans BMW v. Williams*, 196 Ga. App. 230, 231 (1) (395 SE2d 650) (1990) (voidable title conveyed when buyer commits fraud and pays with check that is later dishonored); *In re Smith*, 51 Bankr. 904, 909 (M.D. Ga. 1985) (construing OCGA § 11-2-403 and noting that purchaser who pays with dishonored checks obtains voidable title).

[4] OCGA § 11-2-403 (1) (b).

[5] See OCGA § 11-1-201 (32) (" 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property.").

[6] See OCGA § 11-1-201 (19) (" 'Good faith' means honesty in fact in the conduct or transaction concerned.").

Auto the option of paying the purchase price by some other means; it did not cancel the sale.[7]

Construing a provision virtually identical to OCGA § 11-2-403 (1), an Ohio court has noted:

The "voidable title" doctrine evolved to ameliorate the harshness of the basic rule that a seller can convey no greater title than that seller has to convey. The doctrine attempts to reconcile the rights of a "true owner" who was fraudulently induced to transfer title in goods to a "wrongdoer" with the rights of an innocent purchaser from the wrongdoer. Title in the wrongdoer is "voidable" because the true owner is entitled to rescind the transaction and recover the goods from that individual. The right of rescission is cut off, however, by a transaction to a "good faith purchaser."[8]

Mitchell Motors did not rescind the voidable contract or reclaim the Jeep, and its right of rescission was cut off by the subsequent sale to a good faith purchaser for value. Barnett received good title to the Jeep under OCGA § 11-2-403 (1). Accordingly, the trial court did not err in awarding summary judgment to Barnett and denying Mitchell Motors' motion for summary judgment.[9]

2. Mitchell Motors also asserts that this is not an appropriate case for declaratory relief. It claims, in essence, that the trial court should have dismissed Barnett's petition for declaratory judgment. To support its claim, Mitchell Motors merely cites three general legal principles. It advances no reasoned argument, provides no record references, and makes no effort to apply those general principles to the facts of this case, in clear violation of Court of Appeals Rule 27.

Furthermore, declaratory relief is authorized

when there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly inci-

---

[7] See OCGA § 11-2-703; *Touche, Inc. v. Dearborn*, 161 Ga. App. 188, 190 (1) (291 SE2d 35) (1982) (noting difference between rescission of contract and suit for purchase price).

[8] (Citation omitted.) *Creggin Group v. Crown Diversified Indus. Corp.*, 113 Ohio App.3d 853, 859 (682 NE2d 692, 696) (1996).

[9] OCGA § 11-2-403 (1); see also *Right Touch of Class*, supra at 474 (1) (indicating that Mitchell Motors' "claim for the dishonored check" is against Chris Auto, not Barnett); *Benton v. Duvall Livestock Marketing*, 201 Ga. App. 430 (1) (411 SE2d 307) (1991) (in conversion cases, " '[w]hen one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss' ") (quoting OCGA § 23-1-14).

dent to his alleged rights and which if taken without direction might reasonably jeopardize his interest.[10]

This case involves a dispute over ownership of a Jeep Cherokee. Although Barnett has the vehicle in his possession, Mitchell Motors still holds the certificate of title. Barnett has not been able to obtain a license plate for the Jeep and has been told by police officers not to drive it. Under these circumstances, declaratory relief was appropriate to "guide and protect [Barnett] from uncertainty and insecurity with regard to the propriety of [his] future [use of the Jeep]."[11] The trial court did not err in awarding Barnett declaratory relief.

3. Because we do not find that Mitchell Motors brought this appeal for purposes of delay, Barnett's request for damages under OCGA § 5-6-6 is denied.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 16, 2001

*James B. Gurley,* for appellant.
*Walter W. Furlong,* for appellee.

---

[10] (Punctuation omitted.) *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999).

[11] Id. at 215 (1).